|  | IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT, IN AND FOR VOLUSIA COUNTY, FLORIDA |
|---|---|
| **LATARA COLAY,** | CASE NO.: 23-CA- |
| Plaintiff, | FLA BAR NO.: 0739685 |
| v. | |
| **CITY OF DAYTONA BEACH, FLORIDA,** and **DONALD C. RININGER, individually,** | |
| Defendants. _____/ | |

## COMPLAINT

Plaintiff, LATARA COLAY, hereby sues Defendants, CITY OF DAYTONA BEACH, FLORIDA, and DONALD C. RININGER, individually, alleges:

### NATURE OF THE ACTION

1. This is a civil action seeking monetary damages, declaratory judgment, and legal, equitable, and injunctive relief against Defendant. This is an action brought under the common law of the State of Florida.

2. This is an action involving claims which are, individually, in excess of Fifty Thousand Dollars ($50,000).

### PARTIES

3. At all times pertinent hereto, Plaintiff, LATARA COLAY, has been a resident of Volusia, County, FL. She is *sui juris*.

4. At all times pertinent hereto, Defendant, CITY OF DAYTONA BEACH, FLORIDA, has been organized and existing under the laws of the State of Florida. It is *sui juris*.

5. At all times pertinent hereto, Defendant DONALD C. RININGER, resided within the jurisdiction of this Court and is *sui juris*. He is sue individually.

## CONDITIONS PRECEDENT

6. Written notices of intent to initiate litigation on Plaintiff's state law claims asserted herein, were submitted to Defendant City pursuant to 768.28(6), Florida Statutes.

## STATEMENT OF THE ULTIMATE FACTS

7. Plaintiff, an African American woman who was homeless at the time of the below encounter, suffers from learning disabilities, PTSD from childhood trauma, and schizophrenia.

8. On or about June 15, 2021, between 8:00 am and 8:30 am, Plaintiff fled from the scene of a Family Dollar after taking cleaning supplies such as Lysol disinfectant spray during the COVID-19 Pandemic. Plaintiff, who was approximately 160 pounds at this time, was riding her bicycle, bare-footed, and wearing a bag on her right side.

9. In response, a Family Dollar employee called Defendant for assistance in apprehending Plaintiff. At least two of Defendant's agents responded, Sergeant Donald C. Rininger, a white male, and Officer Kerri-Lee Ellington, a while female, both of whom were driving Defendant issued full-size SUV Trucks.

10. While being closely pursued by Defendant's agent, Rininger, Plaintiff was struck by his 5,000-pound SUV after he purposefully drove the vehicle across the double yellow lines on the road, into the oncoming lane, and continued onto the sidewalk where Plaintiff was located. A few seconds before impact, Rininger made a left turn in the direction in which Plaintiff was riding to corner her between his car and the adjoining fence. However, Plaintiff swerved away from the car and attempted to continue driving through the sidewalk. The very moment it appears that Plaintiff safely dodged the vehicle, it can be seen on Defendant's body camera that Rininger

2

purposely swerved his car wheel to the right in attempt to hit Plaintiff.

11. Plaintiff, still on her bicycle, was then pinned between Rininger's SUV and an iron fence anchored by cement into the sidewalk. Rininger then backed his vehicle away from Plaintiff, with his steering wheel angled to the left.

12. At the moment of impact, Rininger is heard shouting, and Ellington, who was driving in a separate vehicle, is heard gasping at what she just witnessed.

13. Plaintiff was hit near the intersection of Dr. Mary McLeod Bethune Blvd. and Martin Luther King Jr. Blvd. in Daytona Beach, Florida, approximately six blocks away from the store which the incident occurred. Defendant Rininger claimed his collision with Plaintiff was unintentional, but clearly he steered his vehicle towards Plaintiff to detain her with a deadly weapon, his vehicle.

14. Upon making contact with Plaintiff, Rininger immediately began coding distress signals such as "code three" as he attempted to find a pulse from Plaintiff.

15. Ellington initiated contact by walking over to Plaintiff, with no urgency, asking if she had identification on her as she lay on top of her bicycle lifeless. Ellington previously held or currently holds a Certified Nursing Assistant License and should have known what potential life saving measures to take considering the severity of the accident, unfortunately, she did not take any action to ensure Plaintiff's safety post-collision.

16. After a few moments of Plaintiff being unresponsiveness, the two officers removed the bicycle and handbag from being intertangled with the gate which resulted in Plaintiff's head falling to the ground and the items within her bag falling on top of her head and body.

3

17. While at the scene, Ellington stated, "she's alright, she's probably just high" to Rininger, who was still struggling to find a heartbeat.

18. Shortly thereafter, Ellington offered Plaintiff the nickname "auntie" when Rininger asked for Plaintiff's name. Thereafter, the two officers began referring to Plaintiff as "auntie" and calling for her to wake up as she has, what appears to be, a seizure and an episode of hyperventilating. Defendant's agents did not render first aid before EMS arrived.

19. In at least two points in the police body camera, Ellington can be heard accusing Plaintiff of having "dope" (heroin) within a dollar bill found near her body. After putting on gloves to investigate the dollar bill, Ellington realizes there was not any contraband and began to search Plaintiff's bag and body, including lifting her shirt and feeling her breasts.

20. Ellington then walked to her vehicle to "see if she can find out her (Plaintiff's) real name" by way of calling "My Man" in her contacts, also known as Defendant's officer Kemonji Ellington, her husband. Ellington started the conversation by asking if he knew "aunties" real name, then stating that "she's fine, she's just pretending…" further discrediting the seriousness of Plaintiff's condition.

21. As two more of Defendant's agents arrived, they are met by Ellington, who again insisted that "she's fine" (referring to Plaintiff) as Rininger still struggled to find a heartbeat, at least five minutes after impact. Ellington then asked the other agents if they know "auntie's" real name to no avail, to which she responded that she only knows her as "Auntie Barbara."

22. Ellington says to Plaintiff "you're not high, are you? Do I need to get you Narcan?", later stating, "If you're high, they're going to give you Narcan babe", and "open your eyes if you're good, 'cause I don't want to give you that nasty stuff (Narcan)."

4

23. Following, Rininger used his fingertips to pry Plaintiff's eye open, and Ellington returned to Plaintiff's side softly talking, in a cooing manner, for her to open her eyes, asking if she's "good" and calling her "sis." Ellington then began prying Plaintiff's eyes open and rubbing her arm in an attempt to wake her up.

24. Rininger, visibly upset, sat at the hood of his patrol car slumped over until he was greeted by a co-worker who walked with him away from the area of the incident and at that point, Rininger turned off his Defendant issued body camera.

25. As a new officer approached asking questions, Ellington wrongfully assured him that "her (Plaintiff) eyes are open, she's good," mentioning, "she may have had a mini seizure, I don't know what her history is." Ellington then resumed the cooing talk and prying at Plaintiff's eyes, stating, "wake up tootsie."

26. Ellington acknowledged that the emergency response services were "taking forever today" but further neglected to render any first aid to the seemingly lifeless victim, instead, choosing to pump her hand and continuing to talk cooingly.

27. Almost nine minutes after the impact, one of Defendant's agents asked Ellington a question, to which she responded "oh nah, she's good. Yeah, she had a little mini seizure, but I think she's got a history, but she's good, her eyes are open," as two other agents stood, hovering over Plaintiff's body.

28. Ellington walked away then returned, pleading with Plaintiff to wake up, whistling for her attention, and pushing her eyes open.

29. Just before EMS arrived, Ellington, again, assured the officers that Plaintiff is "good," despite having had a "mini" seizure, after giving her explanation for the incident.

30. Once alone with Plaintiff, Ellington stated "I know you stopped talking to me a while ago 'cause I arrested you once, but I still say hi to you every day."

31. At no point during the initial encounter did Plaintiff open her eyes, speak, or show any significant signs of responsiveness. Despite this, Ellington chose to lie regarding Plaintiff's condition to Defendant's agents as well as to EMS upon their arrival.

32. Thereafter, EMS approached Plaintiff and Ellington gave her version of what happened, mentioning that Plaintiff did not hit her head or any organs. At this point, almost twelve minutes after impact, response services were rendered, and Ellington left the scene, walking towards her co-workers. Prior to leaving the scene, Ellington incorrectly identified Plaintiff as someone other than Plaintiff.

33. Ellington was then directed towards a group of three of Defendant's agents, one of whom was Lieutenant Raymond Ousterman, a white male, who asks, "is your camera on?" Plaintiff confirms and is then motioned by two of the agents to walk away.

34. Upon walking back towards the EMS workers and Plaintiff, Ellington is asked "was she (Plaintiff) rammed into the fence?" by an EMS worker. Ellington answered, "She was *just* leaning on the fence, but still on the bicycle."

35. The action, dishonesty, and withholding of vital information further put Plaintiff's life at risk and delayed correct emergency response. Plaintiff suffered injury to her head, neck, back, knee, and legs due to the actions of Rininger from the impact from his vehicle.

36. As another one of Defendant's agents approached Ellington, she immediately stated "She's (Plaintiff) not talking yet, um, she opened her eyes for me, and I mean, honestly I think she's being probably a little extra…(inaudible)… she's not yet spoke though." At this point, the other agent raises his right hand with an acknowledged hand signal and Ellington stopped talking.

6

37. Another one of Defendant's agents approach Ellington regarding the incident and whether Plaintiff's body made contact with the SUV Rininger drove, and Ellington stated that it was "just" the bicycle, but that Plaintiff was trapped between the fence and the SUV, reinforcing the idea that "none" of Plaintiff's vital organs or her head were impacted by the collision.

38. Despite pursuing Plaintiff six blocks away from the location of incident, she was not arrested or charged with any crime.

39. Fortunately, one of Plaintiff's family members was able to locate Plaintiff several hours later. At that time, Plaintiff was found bruised, limping with a pair of crutches and in pain.

40. Plaintiff is still suffering from the injuries she sustained after Rininger hit her with his SUV and her bicycle was never returned to her.

41. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## COMMON LAW NEGLIGENCE
(against the City of Daytona Beach)

42. Paragraphs 1 through 41 are re-alleged and incorporated herein by reference.

43. This count sets forth a claim against Defendant CITY OF DAYTONA BEACH, FLORIDA for common law negligence. Defendant knew or should have known that Plaintiff was within a zone of risk related to contact with its agents/employees.

44. Defendant owed a duty of care to Plaintiff due to the nature of the relationship between Plaintiff and Defendant and/or Defendant had a special relationship with Plaintiff and, consequently, a duty of care was attendant thereto. Alternatively, legal duties devolved upon Defendant because Plaintiff was in the foreseeable zone of risk to be harmed by the actions thereof.

45. Defendant further breached its duty to properly supervise its employee and agents, to ensure the safety of the Plaintiff and/or to properly investigate the circumstances of criminal and/or tortious activity.

46. The actions of Defendant and complained of herein were "operational" functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

47. As a direct and proximate result of the above unlawful acts and omissions, Plaintiff sustained economic damages, including lost income, emotional pain and suffering, mental anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience, hurt, bodily injury and loss of the capacity for the enjoyment of life. These damages occurred in the past, at present and are certain to occur in the future.

## COUNT II
## BATTERY
(against the City of Daytona Beach)

48. Paragraphs 1 through 41 are realleged and incorporated herein by reference.

49. This count sets forth a claim against Defendant CITY OF DAYTONA BEACH, FLORIDA for common law battery. For the purpose of this Count alone, Defendant Rininger was acting inside the course and scope of employment.

50. Plaintiff is entitled to relief against Defendant in that through its officers, employees and agents, Defendant, without justification or the Plaintiff's consent, touched Plaintiff's person in an offensive and harmful manner, in Defendant battered Plaintiff, hit her and caused Plaintiff to sustain injuries. Defendant through its agents and/or employees, intended to hit, push and otherwise batter Plaintiff. This unlawful touching was also accomplished by Defendant through its agents' and/or employees' touching or contact with Plaintiff without any justification and in the

absence of cause to touch or contact Plaintiff. Defendant intended to cause harm to Plaintiff or knew or should've known there was substantial certainty that harm would occur.

51. Defendant conducted no independent investigation into whether any criminal conduct had occurred. Defendant ratified the misconduct of its officers, employees and/or agents in that it was aware of their misconduct and sanctioned their decisions.

52. The actions by Rininger were committed as an agent of Defendant and were committed within the course and scope of his employment.

53. As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include: mental anguish such as depression, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. These damages have occurred at present, in the past and will most likely occur in the future.

## COUNT III
## EIGHTH AMENDMENT VIOLATION-EXCESSIVE FORCE
(against the City of Daytona Beach)

54. Plaintiff re-alleges paragraphs 1 through 41 above and incorporates those allegations in this Count. This count is pled in the alternative.

55. This count sets forth a claim against Defendant CITY OF DAYTONA BEACH, FLORIDA for violation of the Fourth Amendment to the U.S. Constitution, based on excessive force, which claims are brought through 42 U.S.C. §1983.

56. Defendant used excessive force against Plaintiff, as set forth in part above, without justification, consent, cause or lawful authority.

57. Defendant, through Rininger, intended to damage Plaintiff, in that his harmful acts were purposeful, wanton or reckless, in that such acts were substantially certain to result in injury and harm.

58. The Defendants acted to violate Plaintiff's right not to be subjected to the excessive use of force under the Fourth Amendment to the United States Constitution. These violations were of the type and character to which any reasonable person would be aware.

59. Defendants are liable, jointly and severally, to Plaintiff, for their conduct, individually and in concert, in violating Plaintiff's rights under the Fourth Amendment to the U.S. Constitution. Defendant is a person under the applicable law.

60. Defendant misused its power, possessed by virtue of state law and made it possible only because of the authority of state law. The violation of Plaintiff's rights, as described in part above, occurred under color of state law, and is actionable under 42 U.S.C. §1983.

61. The foregoing actions of Defendants were willful, wanton, and in reckless disregard of Plaintiff's rights, and were taken without any lawful justification.

62. The use of excessive force by Defendants is not part of the penalty that citizens have to pay prior to, during and/or after being charged with a criminal offense and determines a cognizable claim in violation of the Fourth Amendment.

63. Defendants knew or should have known that their actions against Plaintiff were excessive given the clearly established law.

64. Based upon the facts presented to Defendant and the applicable law, no reasonable person, company, government agency or law enforcement agency could have concluded that there existed any reasonable cause or legal basis for Rininger running Plaintiff over with his Defendant

issued patrol car. The law was settled and clearly established that the actions of Defendant constituted excessive force under the Fourth Amendment at the time the acts were engaged in.

65. The actions or inactions of Defendant, set forth in part above, constituted deliberate indifference and/or reckless disregard for Plaintiff when Defendant knew of and disregarded Plaintiff's rights, and thus Defendant's actions or inactions constituted the use of excessive force in violation of the Fourth Amendment.

66. Defendant delegated the final policymaking authority to Rininger to make all decisions in the use of force against Plaintiff.

67. Moreover, Defendant engaged in a cover up of Rininger's actions against Plaintiff as evidence by the body cam footage, Ellinger's actions as well as other of Defendant's officers who intentionally either turned off body cameras or moved officers away from their in car camera to shield their unlawful actions from public view, as well as a subsequent meeting with Defendant's Chief, who attempted to convince Plaintiff and her family to let this incident to just go away.

68. Defendant thus ratified Rininger's actions and conduct, hiding his actions from Plaintiff and the public, and failed to take any known disciplinary action against him.

69. The foregoing actions of Defendants were willful, wanton, and in reckless disregard of Plaintiff's rights.

70. As a direct and proximate cause of Defendants' actions, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. These damages have occurred at present, in the past and will most likely occur in the future. Defendants are jointly and severally liable to Plaintiff under this count.

## COUNT IV
## FOURTH AMENDMENT VIOLATION-EXCESSIVE FORCE
(against Rininger)

71. Plaintiff re-alleges paragraphs 1 through 41 above and incorporates those allegations in this Count. This count is pled in the alternative.

72. This count sets forth a claim against Defendant Rininger for violation of the Fourth Amendment to the United States Constitution, based on excessive force, which claims are brought through 42 U.S.C. §1983. Defendant is a person under the laws subject to this count.

73. Defendant used excessive force against Plaintiff, as set forth in part above, without justification, consent, cause or lawful authority.

74. Defendant intended to damage Plaintiff, in that his harmful acts were purposeful, and also in that such acts were substantially certain to result in injury and harm.

75. The Defendant acted to violate Plaintiff's right not to be subjected to the excessive use of force under the Fourth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

76. Defendants are liable, jointly and severally, to Plaintiff, for their conduct, individually and in concert, in violating Plaintiff's rights under the Fourth Amendment to the U.S. Constitution.

77. Defendant misused his power, possessed by virtue of state law and made possible only because of the authority of state law. The violation of Plaintiff's rights, as described in part above, occurred under color of state law, and is actionable under 42 U.S.C. §1983.

78. The foregoing actions of Defendant were willful, wanton, and in reckless disregard of Plaintiff's rights, and were taken without any lawful justification.

79. The use of excessive force by Defendant is not part of the penalty that citizens have to pay prior to, during and/or after being charged with a criminal offense and determines a

cognizable claim in violation of the Fourth Amendment. Being run into and slammed with Rininger's SUV was excessive under the circumstances.

80. Defendant knew or should have known that his actions against Plaintiff were excessive given the clearly established law.

81. Based upon the facts presented to Defendant and the applicable law, no reasonable officer could have concluded that ramming Plaintiff into a fence was reasonable.

82. Defendant was acting under color of state law at all pertinent times.

83. As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. These damages have occurred at present, in the past and will most likely occur in the future. Defendants are jointly and severally liable to Plaintiff under this count. Plaintiff is entitled to awards of punitive damages and attorneys' fees against Defendant under this count.

## COUNT V
## BATTERY
(against Rininger)

84. Paragraphs 1 through 41 are realleged and incorporated herein by reference.

85. This count sets forth a claim against Defendant Rininger for common law battery. For the purpose of this Count alone, Defendant Rininger was acting outside the course and scope of employment with Defendant City.

86. Plaintiff is entitled to relief against Defendant in that he, without justification or the Plaintiff's consent, touched Plaintiff's person in an offensive and harmful manner, in Defendant battered Plaintiff, hit her and caused Plaintiff to sustain injuries. Defendant intended to hit, push and otherwise batter Plaintiff. This unlawful touching was also accomplished by Defendant

touching or contact with Plaintiff without any justification and in the absence of cause to touch or contact Plaintiff. Defendant intended to cause harm to Plaintiff or knew or should've known there was substantial certainty that harm would occur.

87. As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include: mental anguish such as depression, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. These damages have occurred at present, in the past and will most likely occur in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendants and for Plaintiff awarding damages to Plaintiff from Defendants for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendants and for Plaintiff permanently enjoining Defendants from future violations of the state and federal laws enumerated herein;

(e) enter judgment against Defendants and for Plaintiff awarding Plaintiff attorney's fees and costs; and

(f) grant such other further relief as being just and proper under the circumstances.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demand a trial by jury on all issues set forth herein which are so triable.

Dated this 20th day of June, 2023.

                                            Respectfully submitted,

                                            /s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF



**LAURA E. ROTH**
CLERK OF THE CIRCUIT COURT

SEVENTH JUDICIAL CIRCUIT - VOLUSIA COUNTY
P.O. BOX 6043 DELAND, FLORIDA 32721-6043 - WWW.CLERK.ORG

Filing #:175757474
Filer:Marie A Mattox
Payment:$420.00

1 Filing Fee: $400.00
2 Summons Issuance: $20.00
3 Complaints/Petitions Complaint: $0.00
4 Complaints/Petitions Request that Summons be Issued: $0.00
5 Complaints/Petitions Request that Summons be Issued: $0.00

*This document is a Clerk generated receipt.  This  page was not included in the original court document submitted by the filer.*